# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GWENDOLYN GLODOWSKI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15-cv-0143 |
| ) | |
| CAROLYN W. COLVIN, Acting Commissioner ) | Magistrate Judge Susan E. Cox |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Gwendolyn Glodowski ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits Title II of the Social Security Act. For the reasons discussed more fully below, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 17].

## STATEMENT

Plaintiff, a 55-year-old woman, applied for disability insurance benefits on December 14, 2010, under Title II of the Social Security Act. Plaintiff's application was denied by the Social Security Administration ("Administration") on April 26, 2011, and upon reconsideration on August 25, 2011. Plaintiff then requested a hearing in front of an Administrative Law Judge ("ALJ") to appeal the Administration's decision; that request was granted, and a hearing in front of an ALJ was held on July 5, 2013. (R. at 13.)

The medical records in this case show that Plaintiff suffers from several conditions. First, Plaintiff suffers from back and neck problems. Plaintiff began receiving treatment for her back and neck pain as early as 2004, with Dr. Seng Leong. (R. at 476). Diagnostic testing performed

in 2004 showed degenerative spurring in the thoracic and lumbar spine, and mild spondyltic changes at the C5-C6 joint. (R. at 601-602.) In 2006 and 2007, Plaintiff received several epidural injections to try to relieve her back pain, and also tried to alleviate her neck and back symptoms with physical therapy and acupuncture. (*See* R. at 29-30.) Over time, Plaintiff's neck pain increased, and included cervical radiculopathy and degenerative disc disease. (R. at 929-946.) Her neck pain and arm tingling were worse with "coughing, sneezing, standing sitting, when she is walking, and when she is tense." (R. at 945.) A functional capacity report that Dr. Julian Freeman prepared in December 2012 noted that Plaintiff had spinal stenosis in the cervical area. (R. at 1099.)

Additionally, Plaintiff suffered from impingement syndrome of her left shoulder. (R. at 25.) Plaintiff's left shoulder issues appear to have worsened in 2007; she unsuccessfully attempted to relieve her symptoms through physical therapy between March and May 2007. (R. at 30.) In May 2007, Plaintiff was diagnosed by her treating physician, Dr. David Schneider, with "minor rotator tendinitis with subacromonial impingement syndrome." (R. at 933.) An MRI a of Plaintiff's left shoulder one month later revealed osteolysis of the distal clavicle, AC joint effusion, and a possible tear of the supraspinatus tendon. (R. at 935.) Over the next several months, Plaintiff had injections to reliever her left shoulder pain; as of July 2007, she reported that her left shoulder pain was being managed effectively. (R. at 933-38.) However, by August of 2007, Plaintiff reported that her shoulder pain had increased significantly. (R. at 940.) In October 2007, the Plaintiff underwent arthroscopic surgery on her left shoulder for left shoulder impingement syndrome and acromioclavicular joint arthralgia; the surgeon performed "acromioplasty/subacromial decompression" and distal clavicle resection. (R. at 491-492.) The surgery was performed by Dr. Schneider's colleague at Lake County Orthopedic Assicoates, Dr.

Craig A. Cummins. As of December 2007, Dr. Cummins noted that Plaintiff appeared to be progressing well post-operatively, but had increased pain in her left shoulder in the mornings and evenings. (R. at 944.)

Plaintiff also has fibromyalgia, which was first diagnosed by Dr. Schneider in January 2006, when he noted that Plaintiff's lumbar spine "reveal[ed] 14 of out 18 fibromyalgia tender points along with some myofascial trigger points as well." (R. at 929-930.) Plaintiff treated regularly with Dr. Schneider for her fibromyalgia and ongoing chronic pain associated with that condition throughout 2006, 2007, and part of 2008. (R. at 929-949.) On November 16, 2010, Dr. Bruce Johnson diagnosed Plaintiff with fibromyalgia and chronic muscular cervical pain, and referred her for physical therapy. (R. at 694.)

In March 2012, Plaintiff presented to Dr. Ahmed Farrag, complaining of right foot pain (R. at 1010); Dr. Farrag "determined her foot pain was a symptom of fibromyalgia." (R. at 33.) Dr. Farrag also completed a Fibromyalgia Residual Functional Capacity Questionnaire on August 8, 2012. (R. at 992.) Dr. Farrag diagnosed Plaintiff with hypertension, chronic COPD, fibromyalgia, anxiety, and non-active hepatitis. (R. at 992.) He reported that Plaintiff could walk less than one block without rest or severe pain, could tolerate sitting for 30 minutes and 5 minutes of standing, and could sit, stand, or walk for less than 2 hours in an 8-hour working day. (R. at 994.)

Dr. Freeman also produced a report on Plaintiff's capacity on December 31, 2012, after reviewing Plaintiff's medical records. (R. at 1097.) Dr. Freeman noted that Plaintiff's "main sources of limitation are pain with limb movement and 'gelling' or inability to initiate limb movement due to diffuse tendinitis and synovitis, with ligament, tendon, and muscle area pain." (R. at 1100.) He further reported that "[a]n additional course of limitation is severe fatigue,

3

limiting ability to persist once initiated." (R. at 1100.) Dr. Freeman concluded that "[a]s a result of these areas of pathology, from at least [January 2006] onwards, the individual, at most, was capable of" walking and standing for one hour per day and sitting for 6 hours per day, among other limitations. (R.at 1100.)

At the hearing before the ALJ, a medical expert ("ME"), Dr. Ashok Jilhewar testified. (R. at 56.) After summarizing the medical evidence, he opined that Plaintiff could perform light work from March 15, 2003, until May 10, 2006, with several restrictions and modifications. (R. at 35-36.) From May 10, 2006, Dr. Jilhewar limited Plaintiff to sedentary work with similar restrictions and modifications. (R. at 35-36.)

Following the hearing, the ALJ determined, *inter alia*, that: 1) Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007; 2) Plaintiff did not engage in substantial gainful activity from her alleged disability onset date of March 15, 2003, through her date last insured ("DLI") or December 31, 2007; 3) through the DLI, Plaintiff's severe impairments include degenerative disease of the lumbar/cervical spine, hepatitis, immune complex disorder, fibromyalgia, chronic obstructive pulmonary disease, and impingement syndrome of the left shoulder; 4) through the DLI, Plaintiff's impairments do not meet, either individually or in combination, the severity requirements of the listing in 20 CFR 404, Subpart P, Appendix 1; 5) between March 15, 2003 and May 10, 2006, Plaintiff maintained the residual functional capacity ("RFC") to: "occasionally lift and/or carry 20 pounds, and frequently lift and/or carry 10 pounds; sit, stand, and walk respectively, with normal breaks, for up to six hours in an eight-hour workday, but for no more than two hours continuously; push/pull to a weight equivalent up [sic] 20 pounds occasionally, and 10 pounds frequently; may not climb, balance, stoop, kneel, crouch, or crawl, more than occasionally; must avoid concentrated exposure to

fumes, odors, dusts, gases, and other pulmonary irritants; and did not possess the capacity to understand, recall, focus upon, attend to or carry out complex or detailed insturctions, or to perform complex or detailed tasks; but retained the capacity to understand, recall, focus upon, attend to and to carry out simple routine instructions, and to focus upon, attend to and perform simple routine tasks (which do not change in nature on a daily basis); at a sustained and workmanlike pace;" 6) from May 10, 2006 through the DLI, the Plaintiff's RFC including the following additional limitations: "occasionally life and/or carry up to 10 pounds, and frequently lift and/or carry less than 10 pounds; stand, and walk, with normal breaks for up to a combined total of two hours in an eight hour workday, and for no more than 30 minutes continuously; may not climb ladders, ropes, or scaffolds; many not with the upper extremities bilaterally, reach in any direction, including overhead or [sic] more than a frequent basis; may not with the hands/upper extremities, bilaterally perform fine (finger/pinch), or gross (grasp, twist, turn) manipulative tasks on more than a frequent basis; and may not with hand/upper extremities, bilaterally, perform work requiring feeling on more than a frequent basis; 7) prior to May 10, 2006, Plaintiff was capable of performing her previous work as a fast food worker, and from May 10, 2006 through the DLI, there existed a significant number of jobs in the national economy that Plaintiff could perform, given her age, education, work, experience, and RFC. (R. at 23-40.)

In reaching his decision, the ALJ gave "significant weight" to the ME's opinion because it was "consistent with the medical evidence of record." (R. at 38.) Dr. Farrag and Dr. Freeman's opinions "were given little weight for their assessments, which were completed long after the date last insured of December 31, 2007, and appear to be inconsistent with the overall record, especially for the period as of and preceding December 31, 2007." (R. at 38.) The ALJ further

noted that, as of the DLI, "none of [Plaintiff's] treating sources noted that she was unable to perform basic work activity, or even provided any particular functional limitations."  (R. at 38.)

## DISCUSSION

### I. Standard of Review

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, if it is supported by substantial evidence, and if it is free of legal error.  *See* 20 C.F.R §§ 404.1520(a), 416.920(a); 42 U.S.C. § 405(g).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  This standard is satisfied even if the ALJ makes only a "minimal[] articulat[ion of her] justification." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

### II. The ALJ Improperly Discounted the Treating Physician's Opinion

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence.  20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  If an ALJ does not give the opinion controlling weight, the ALJ must evaluate six criteria in deciding how much weight to afford a medical opinion: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion.  20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009).  An opinion is given controlling weight because "a treating physician has the advantage

over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Here, the ALJ improperly discounted the opinions of Plaintiff's treating physicians. With regard to the treating physicians before the DLI, including Dr. Schneider and Dr. Cummins, the ALJ failed to discuss any of the factors listed above. Additionally, in the small amount of analysis devoted to Dr. Schneider's notes, the ALJ claims that "none of her [pre-DLI] treating sources noted that she was unable to perform basic work activity." This is demonstrably false. On August 31, 2007, Dr. Schneider noted that Plaintiff reported that her neck and shoulder pain was a ten-out-of-ten, and was "worse with standing, sitting and walking." (R. at 940.) This report would suggest that Plaintiff was incapable of performing basic work activity. Moreover, Dr. Cummins, a colleague of Dr. Schneider who performed Plaintiff's surgery, noted that "Plaintiff notes a very difficult time sleeping on [her left], lifting 10 pounds overhead, throwing a ball or doing her usual work or sporting activities." (R. at 941.) None of this evidence was considered by the ALJ in making his ruling. While this Court harbors some doubts about whether Plaintiff was disabled as of the DLI,[1] it was inappropriate for the ALJ to make this finding without fully considering the medical evidence from Plaintiff's treating physicians or performing the necessary analysis before rejecting it.

The ALJ also failed to consider the necessary factors before discounting Dr. Farrag's opinion. The ALJ simply stated that Dr. Farrag's opinion was "given little weight" because it was "completed long after the date last insured of December 31, 2007, and appear[ed] to be inconsistent with the overall clinical record, especially for the period as of and preceding

---

[1] If the Plaintiff was not disabled before the DLI, she would not be eligible for disability benefits. *See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

December 31, 2007." (R. at 38.) The ALJ did not mention the nature or length of the treatment relationship, discuss Dr. Farrag's specialty in the field of rheumatology, or provide any analysis of the manner or degree in which his opinion was inconsistent with the medical evidence beyond the conclusory statement recited above. As such, the Court remands this case to the ALJ for a more fulsome analysis of the opinions of Plaintiff's treating physicians.[2]

### III. On Remand, the ALJ Should Apply the New Policy Ruling On Credibility

Plaintiff also argues that the ALJ failed to make a proper credibility determination. The Court does not reach that issue, but notes that the Social Security Administration (the "Administration") has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p. Although the Court does not make a ruling on the issue of credibility at this time, there are certain concerns that the Court would like the ALJ to address on remand. In particular, SSR 16-3p states that it is "not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms;" instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." On remand, the ALJ should take care to heed the requirements of SSR 16-3p.

---

[2] Plaintiff argues in her brief that the ALJ failed to properly account for Plaintiff's fibromyalgia in making his RFC determination. The ALJ's RFC determination was potentially affected by failing to adequately analyze the Plaintiff's treating physicians' opinions. As such, the Court will not reach that issue in this opinion until the ALJ makes an RFC determination that includes a more appropriate consideration of the medical records from the treating physicians.

## **CONCLUSION**

For the reasons discussed more fully above, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 17].

**ENTER:**
**DATED:** 7/5/2016

Susan E. Cox, U.S. Magistrate Judge